UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:_____

AXOS CLEARING LLC

       Plaintiff,
v.

SCOTT REYNOLDS, an individual; and
SRR FORTRESS CAPITAL, LLC,
a Florida limited liability company

       Defendants.
_____/

# COMPLAINT

Axos Clearing LLC, f/k/a COR Clearing LLC ("**Plaintiff**" or "**Axos Clearing**"), hereby complains and alleges against defendants Scott Richard Reynolds ("**Reynolds**") and SRR Fortress Capital, LLC ("**SRR**") (collectively, "**Defendants**") as follows:

1. Defendants undertook and effectuated a scheme to bypass restrictions on Defendants' ability to engage in trades within a firm inventory account held by non-party Spartan Securities Group, Ltd. ("**Spartan**") at Axos Clearing through various and ongoing means of fraud and deception.

2. Defendants' scheme resulted in direct injury of no less than $16,600,000 to Axos Clearing.

3. In an attempt to settle the dispute, Axos Clearing and Defendants entered into a Settlement Agreement and Release, dated March 8, 2019 (the "**Settlement Agreement**"). A copy of the Settlement Agreement is attached as **Exhibit A**.

4. The Settlement Agreement provided that Defendants would wire $7.5 million from the Pledged Account no later than March 8, 2019 at 8:00 p.m. Eastern Standard Time.

5.     Through the Settlement Agreement, Defendants expressly agreed to pledge assets totaling $7.5 million dollars from an account held by Defendants Reynolds and SRR at TD Ameritrade (the "**Pledged Account**") to secure the $7.5 million payment.

6.     As of the time of filing this Complaint, Defendants have failed to wire the $7.5 million from the Pledge Account as required by the Settlement Agreement.

7.     Defendants additionally agreed to execute a mortgage and promissory note in favor of Axos Clearing via its affiliate Axos Bank in the amount of $3 million on real property located at 40 West Marino Drive, Miami Beach, Florida, 33139 (the "**San Marino Property**").

8.      As of the time of filing this Complaint, Defendants have refused to execute the documents required to establish the lien on the San Marino Property.

9.     Reynolds, on behalf of Defendants, has now disclaimed any and all obligations under the Settlement Agreement and has stated he will not be complying with Defendants' obligations.

10.    Accordingly, Axos Clearing seeks damages arising from Defendants' breaches of the Settlement Agreement, to enforce the Settlement Agreement through specific performance, and, in the alternative, seeks damages and other relief for Defendants' fraudulently inducing Axos Clearing into the Settlement Agreement.

## The Parties and Relevant Non-Parties

11.    Plaintiff Axos Clearing is Delaware limited liability company, with its principal place of business in Omaha, Nebraska.  Its sole member is Axos Securities Holding, LLC, a Nevada limited liability company, with its principal place of business in Las Vegas, Nevada. Axos Securities Holding, LLC's sole member is Axos Nevada Holding, LLC, a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. Axos Nevada

Holding, LLC's sole member is Axos Financial, Inc., a Delaware corporation with its principal place of business in San Diego, California.

12. Defendant **Reynolds** is an individual and citizen of Florida, residing at 91 North Hibiscus Drive, Miami Beach, Florida 33139.

13. Upon information and belief, Reynolds has worked at all relevant times as a registered representative with non-party Spartan, where he is a trader. Reynolds has been registered with Spartan since 2005, and is a General Securities Principal. He serves as the principal of an Office of Supervisory Jurisdiction of Spartan in Miami.

14. Defendant Reynolds is the sole member of SRR, a Florida limited liability company located at 100 West San Marino Drive, Miami Beach, Florida 33139. Accordingly, SRR is a Florida citizen for purposes of diversity.

15. Defendants Reynolds and SRR maintain at least one account (Account No. 488-XXXXX), consisting of cash and securities, with non-party TD Ameritrade.

16. Non-party Spartan is a broker/dealer registered with the Financial Industry Regulatory Authority ("**FINRA**") and the U.S. Securities and Exchange Commission ("**SEC**"). Spartan is a wholly-owned subsidiary of non-party Connect X Capital Markets, LLC ("**Connect**"), a Florida limited liability company. Spartan engages in proprietary trading and is a market maker in several securities. Axos Clearing performed clearing services for Spartan pursuant to the Fully Disclosed Clearing Agreement between Axos Clearing and non-party Spartan ("Clearing Agreement").

17. Upon information and belief, SRR is the alter ego of Reynolds and SRR's purported separate legal existence should be ignored. Upon information and belief, SRR is not only influenced and governed by Reynolds, but there is such a unity of interest and ownership that the individuality or separateness of Reynolds and SRR has ceased, and adherence to the

fiction of the separate existence of SRR would, under the circumstances presented by this case, sanction a fraud or promote injustice.

18. Upon information and belief: (a) SRR and Reynolds have commingled funds and other assets, failed to segregate funds, and diverted funds or assets to other than corporate uses; (b) Reynolds has treated assets of SRR as his own; (c) Reynolds is the sole owner, member, and/or officer of SRR; (d) Reynolds has failed to adequately capitalize SRR; (e) SRR is used as a mere shell, instrumentality, or conduit for the business of Reynolds; and (f) Reynolds has disregarded legal formalities vis-à-vis SRR and failed to maintain arm's length relationships with it.

## Jurisdiction and Venue

19. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity exists between the parties and the matter in controversy exceeds $75,000.

20. This Court has personal jurisdiction over Defendants because all Defendants are residents of Miami-Dade County, Florida, and each cause of action is predicated on actions taken by Defendants in Miami-Dade County.

21. Venue is proper within this District under 28 U.S.C. § 1391(b) because Defendant Reynolds is a resident of Miami-Dade County, Defendant SRR is a Florida limited liability company with its principal place of business in Miami-Dade County, and a substantial portion of the events giving rise to the claims for relief stated in this Complaint arose in this District.

## **General Allegations**

**REYNOLDS' UNAUTHORIZED TRADING IN "SHORT" POSITIONS IN BPTH**

22. Spartan imposed specific limits, based upon regulatory restrictions, on the nature and amount of trading that Reynolds was permitted to conduct on Spartan's behalf, and Reynolds agreed to operate within those limits.

23. Among the limitations Spartan implemented, and to which Reynolds agreed, for Reynolds' trades in listed securities were a maximum intra-day position in the amount of $500,000 per ticker symbol (including both long and short positions), never to exceed at any single time $500,000, and a total aggregate intra-day basket of all positions held at any time not to exceed $3,000,000.

24. The total firm aggregate purchased for the day for all of Spartan is $10,000,000, set by Depository Trust & Clearing Corporation Limit Monitoring, a risk mitigation tool for clearing services.

25. Reynolds agreed that as a condition of his ability to trade on behalf of Spartan, he would abide by these limitations.

26. To ensure that daily limitations were not exceeded by brokers like Reynolds, unless tampered with, Spartan also utilized BRASS, an integrated trade order, execution and compliance management application.

27. On or around March 6, 2019, Reynolds executed a series of sales transactions that resulted in a "short" position of 824,436 shares of Bio-Path Holdings, Inc. (traded on the NASDAQ under the ticker "**BPTH**").

28. These trades took place within Spartan's proprietary account and far exceeded the limits to which Reynolds and Spartan had agreed.

29.     Specifically, the short position had an average price of $9.32 per share, or an aggregate $7,683,744 in short value (exceeding 75% of Spartan's net aggregate limit firm-wide of $10,000,000).

30.     Reynolds actively attempted to conceal from Spartan that he had engaged in these unauthorized trades by falsifying transactions logged with the BRASS order management system to create the false impression that he had not exceeded the limitations imposed on his trading and to which he had agreed to abide.

31.     Reynolds falsified certain "buy" transactions to make it appear to Spartan that he was "short" a smaller number of shares than was actually the case.  In reality, Reynolds increased Spartan's exposure to BPTH by shorting shares well in excess of the agreed-upon limitations on his trading.

32.     Spartan's management and Axos Clearing's management first learned on March 6, 2019 of the magnitude of Reynolds' unauthorized position in BPTH.

33.     Immediately upon learning of Reynolds' unauthorized position, Axos Clearing, together with Spartan management, instructed Reynolds to close out the short position in BPTH.

34.     Upon being confronted, Reynolds represented that he would close the position completely by the end of that trading day.

35.     Reynolds, however, failed to do as promised, thereby increasing Spartan's and Axos Clearing's exposure.  Instead, he only partially closed his position in BPTH.  Specifically, Reynolds closed out only 259,687 shares, at an average price of $10.06.

36.     Reynolds also proceeded to place additional orders to short a significant number of additional shares of BPTH without authorization, greatly exacerbating Spartan's and Axos Clearings' risk exposure.

**LOSSES CAUSED TO AXOS CLEARING AS A RESULT OF REYNOLDS' CONDUCT**

37. Reynolds' actions on March 6, 2019 caused the damages to increase dramatically as a result of the share price of BPTH increasing dramatically after Reynolds' short sale trades.

38. Because the share price of Bio-Path Holdings, Inc. increased dramatically shortly after Reynolds made the short sale trades, the cost to "cover" those short sales was significant.

39. 5,386 BPTH shares were covered in the extended trading session at an average price of $12.14.

40. On March 7, 2019, BPTH opened at $17.01.

41. BPTH's stock price increased more than 220% on March 7, 2019, ending the day at a per share price of $38.86.

42. By the time the remaining position was closed out, BPTH's stock price was at an average price of $34.55 per share.

43. Reynolds' unauthorized trades thus resulted in a net loss of approximately $16,600,000.

44. Axos Clearing is holding approximately $1.4 million of cash and marketable securities from Spartan, with a resulting approximately $15.2 million deficiency in Spartan's account at Axos Clearing.

45. The deficit constitutes direct financial injury to Axos Clearing.

**AXOS CLEARING SEEKS TO HOLD REYNOLDS RESPONSIBLE FOR THE HARM HE CAUSED**

46. Axos Clearing made clear its intent to hold Defendants responsible for the deficiency.

47. Early on March 7, 2019, Reynolds acknowledged his responsibility for the unauthorized trading and the short-sale trading losses, and the injury he caused to Axos Clearing.

48. Reynolds agreed to cover the entire deficiency and injury.

49. Defendants specifically pledged the TD Ameritrade account – *i.e.*, the Pledged Account – maintained by Defendants which, as reflected by the account statement, showed a closing balance of $13,506,672.93 as of January 31, 2019.

50. TD Ameritrade informed Axos Clearing that Reynolds had attempted to dissipate the Pledged Account.

51. TD Ameritrade temporarily blocked withdrawal of funds from the Pledged Account.

52. TD Ameritrade has informed Axos Clearing that maintaining the block and freeze of the Pledged Account will require a court order or Reynolds' express direction to TD Ameritrade.

### THE PARTIES ENTER INTO THE SETTLEMENT AGREEMENT

53. To settle the dispute, Axos Clearing and Defendants entered into the Settlement Agreement on March 8, 2019.

54. Axos Clearing materially relied on Reynolds' representations that he would fulfill Defendants' commitments as set forth in the Settlement Agreement.

55. Defendants knew that Axos Clearing was materially relying on Reynolds' representations when Axos Clearing entered into the Settlement Agreement.

56. Axos Clearing now believes and avers that, throughout the negotiations leading up to the Settlement Agreement, Reynolds had no intention of fulfilling Defendants' commitments set forth in the Settlement Agreement.

57. Among other things, the Settlement Agreement expressly provides that the "Parties agree that the remedies available to enforce this agreement include specific performance." (Exhibit A, ¶ 12).

58. The Settlement Agreement required that Defendants wire $7.5 million in cash from the Pledged Account no later than March 8, 2019 at 8:00 p.m. Eastern Standard Time. (Exhibit A, ¶ 1).

59. Through the Settlement Agreement, Defendants expressly agreed to pledge assets totaling $7.5 million dollars from the Pledged Account held by Defendants at TD Ameritrade and granted Axos Clearing a security interest in the Pledged Account. (Exhibit A, ¶ 2).

60. Defendants additionally granted a security interest in the amount of $3 million against the San Marino Property and agreed to create a mortgage in favor of Axos Clearing in the amount of $3 million on the San Marino Property. (Exhibit A, ¶ 4).

61. Defendants have performed none of the actions required of them in the Settlement Agreement and, upon information and belief, Reynolds knew that Defendants would not perform those actions at the time he executed the Settlement Agreement.

62. Upon information and belief, at the time he executed the Settlement Agreement, Reynolds intended not to perform the actions required of him and SRR Fortress Capital under the Settlement Agreement.

**DEFENDANTS' BREACHES OF AND REPUDIATION OF THE SETTLEMENT AGREEMENT**

63. As of the time of filing this Complaint, Defendants have failed to wire the $7.5 million from the Pledge Account as required by the Settlement Agreement.

64. Most recently, Defendants have disclaimed any and all obligations under the Settlement Agreement, thereby attempting to repudiating it.

65. Axos Clearing has performed all conditions precedent to bringing this action or any such conditions have been excused or waived.

## COUNT I—BREACH OF SETTLEMENT AGREEMENT

66. Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through __ of this Complaint.

67. On March 8, 2019, Defendants and Axos Clearing entered into a binding and enforceable Settlement Agreement.

68. Defendants have materially breached their obligations under the Settlement Agreement.

69. Axos Clearing has performed all of its obligations under the terms of the Settlement Agreement, except those excused or rendered impractical or impossible by Defendants' breaches described above.

70. As a result, Axos Clearing has been damaged and is owed $7.5 million in specific cash and assets in the Pledged Account and the $3 million promissory note and mortgage.

71. In addition, Axos Clearing has suffered and will continue to suffer other direct and consequential damages, including the cash and assets in the Pledged Account, the debt documented in the note and mortgage, and damage to its business, goodwill, and property, in an amount to be determined at trial.

## COUNT II—FRAUDULENT INDUCEMENT

72. Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations of Paragraphs 1 through __ of this Complaint.

73. This count is brought in the alternative to Count I for Breach of Settlement Agreement, in the event that the Court finds the Settlement Agreement to be unenforceable in its full terms for any reason.

74. Through his actions, Reynolds fraudulently induced Axos Clearing into entering into the Settlement Agreement.

75. Axos Clearing materially relied on Reynolds representations in entering into the Settlement Agreement, which limited Axos Clearing's claims against Defendants to $10,500,000 instead of the full $16,600,000 in losses suffered by Axos Clearing.

76. At the time Reynolds made the representations, he knew that they were false and that he and defendant SRR Fortress Capital had no intention of fulfilling the representations.

77. Axos Clearing would not have entered into the Settlement Agreement but for Reynolds' material misrepresentations.

78. As a result of Reynolds' material misrepresentations, Axos Clearing has been damaged

## PRAYER FOR RELIEF

Axos Clearing requests the following relief as a result of the unlawful acts of Defendants described herein:

A. Specific performance of the Settlement Agreement.

B. An award of compensatory, consequential, and punitive damages flowing from the wrongful acts as described herein.

C. An order attaching, impounding, and imposing a constructive trust on all cash and securities in the TD Ameritrade account under Defendants' names and all other assets held by Defendants.

E. Injunctive relief as appropriate.

E. An order for such other and further relief as the Court might deem just and appropriate.

Date: March __, 2019                                Respectfully submitted,

/s/ *Christopher S. Carver*  .
Jason S. Oletsky

Fla. Bar. No. 009301
jason.oletsky@akerman.com
Christopher S. Carver
Fla. Bar No. 993580
christopher.carver@akerman.com
AKERMAN LLP
350 E. Las Olas Blvd., Ste. 1600
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

*Counsel for Plaintiff Axos Clearing LLC*