# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:19-cv-20979-KMM

_____

AXOS CLEARING LLC

                 Plaintiff,

    v.


SCOTT REYNOLDS, an individual;

SRR FORTRESS CAPITAL, LLC,

A Florida limited liability company


                 Defendants.

_____


## DEFENDANTS SCOTT REYNOLDS' AND SRR FORTRESS CAPITAL'S MOTION TO COMPEL ARBITRATION OR DISMISS THE COMPLAINT


Ford O'Brien LLP
575 Fifth Avenue, 17th Floor
New York, NY 10017
aford@fordobrien.com
Phone: (212) 858-0040
*Counsel for Defendants*


Lorne E. Berkeley, Esq.
Florida Bar No.: 146099
Email: LBerkeley@drbdc-law.com
4000 Ponce De Leon Blvd., # 800
Coral Gables, Florida 33146
Telephone No.: (305)-448-7988
Facsimile No.: (305) 448-7978
*Counsel for Defendant*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ....................................................................................................4

ARGUMENT ........................................................................................................................10

    I.     Legal Standards ........................................................................................................10

    II.    The Entire Dispute is Subject to Mandatory Arbitration in FINRA ...........................11

    III.   Plaintiff Has Failed to Allege the Existence of an Enforceable Contract ...................12

          a.   As Axos Clearing Has Already Admitted, Reynolds Never Agreed to the "Pledge
              Agreement," and in Fact Expressly "Refused" To Sign It – to Quote Plaintiff
              Axos Clearings In-House Counsel Ethan McComb's Affidavit ...........................12

          b.   The "Settlement Agreement" Lacks Mutual Assent, and the Consideration is
              Illusory .............................................................................................................13

    IV.   Plaintiff's Fraud Based Claims Lack Specificity Under Rule 9(b), Are Duplicative of
         the Breach of Contract Claims, And These and Plaintiff's Remaining Claims Fail to
         State Claim .............................................................................................................15

          a.   The Amended Complaint Fails To State Fraud Claims With Sufficient
              Particularity, And Count II–V Are Otherwise Legally Deficient .........................15

          b.   The Fraud Claims Are Barred by the Florida's Independent Tort Doctrine, And
              Are Otherwise Duplicative ................................................................................17

          c.   The Amended Complaint Fails to Allege Reynolds Had A Duty to Disclose, And
              In Any Event Spartan's Actual BPTH Position Was Available and Known to
              Axos Clearing At All times Through NSCC System ...........................................18

          d.   Axos Clearing Has Not Alleged the Element of Tortious Interference or Unjust
              Enrichment ........................................................................................................18

    V.    The Complaint Fails to Join Necessary Parties Axos Financial, Axos Bank, and
         Spartan Securities ....................................................................................................19

i

CONCLUSION ................................................................................................................21

## TABLE OF AUTHORITIES

*American Atlantic Lines v. Ros Forwarding, Inc.*,
    441 So.2d 1153 (Fla. 3d DCA 1983) ..................................................................... 13

*Aschcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................... 10

*Barnes v. Diamond Aircraft Industries, Inc.*,
    499 F. Supp. 2d 1311 (S.D. Fla. 2007) ................................................................ 15

*Boulet v. Bangor Sec. Inc.*,
    324 F. Supp. 2d 120 (D. Me. 2004) ...................................................................... 10

*Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc*,
    826 F. Supp. 460 (N.D. Ga. 1993) ............................................................... 3 FN. 1

*Bullock v. Harwick*,
    158 Fla. 834 (Fla. Sup. Ct. 1947)................................................................ 13 FN. 8

*Commonwealth Equity Services, LLC v. Ohio Natl. Life Ins. Co.*,
    18-CV-12314-DJC, 2019 WL 1470131 (D. Mass Apr. 3, 2019) ................................ 11

*Cullinane v. Uber Techs., Inc.*,
    893 F.3d 53 (1st Cir. 2018) ...................................................................................... 9

*Doe v. Roe*,
    2018 WL 4698886 (S.D. Fla. Sept. 29, 2018) ............................................................ 11

*DNA Sports Performance Lab. Inc. v. Club Atlantis Condominium Association, Inc.*,
    219 So.3d 107 (Fla. 3d DCA 2017) ...................................................................... 15

*Durham v. Bus. Mgmt. Assocs.*,
    847 F.2d 1505 (11th Cir. 1988) ............................................................................ 16

*Federated Title Insurers, Inc. v. Ward*,
    538 So.2d 890 (Fla. 4th DCA 1989)..................................................................... 14

*Fenton v. Linsco/Private Ledger Corp.*,
    No. 96-10747-GAO, 1996 WL 464045 (D. Mass. Aug. 7, 1996) ............................... 11

*Financial Sec. Assur., Inc. v. Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007) ............................................................................ 10

*Fritz v. Am. Home Shield Corp.*,
  751 F.2d 1152 (11th Cir. 1985) ........................................................................... 18

*Gentry v. Carnival Corp.*,
  2011 WL 4737062 (S.D. Fla. Oct. 5, 2011) ........................................................... 9

*Gibson v. Courtois*,
  539 So.2d 459, 460 (Fla. 1989) ........................................................................... 13

*Global Quest, LLC v. Horizon Yachts, Inc.*,
  849 F.3d 1022 (11th Cir. 2017) ........................................................................... 16

*Hill v. Peering Bay Marina Ass'n, Inc.*,
  985 So.2d 1162 (Fla. 3d DCA 2008) ..................................................................... 14

*Horsley v. Feldt*,
  304 F.3d 1125 (11th Cir. 2002) ................................................................... 10 FN. 7

*Hummel v. Tamko Bldg. Products, Inc.*,
  615-CV-910, 2015 WL 12843907 (M.D. Fla. Nov. 6, 2015) ................................. 17

*Kaye v. Ingenio, Filiale Do Loto-Quebec, Inc.*,
  No. 13-61687-CIV, 2014 WL 2215770 (S.D. Fla. May 29, 2014) ........................... 16

*John M. Floyd Assocs., Inc. v. First Florida Credit Union*,
  443 Fed. App'x 396 (Fla. 11th Cir. 2011) ............................................................ 14

*Managed Care Solutions, Inc. v. Community Health Systems, Inc.*,
  2012 WL 12861133 (S.D. Fla. May 14, 2012) ............................................... 14 FN. 11

*Marshall Cnty. Bd. of Educ. V. Marshall Cnty. Gas Dist.*,
  992 F.2d 1171 (11th Cir. 1993) ............................................................................. 9

*McCullouch v. Janney Montgomery Scott LLC*,
  992 F.2d 1171 (11th Cir. 1993) ........................................................................... 10

*Menudo Intl., LLC v. In Miami Prod.*,
  17-21559-CIV, 2018 WL 1745395 (S.D. Fla Apr. 11, 2018) ................................. 17

*Molinas Valle Del Cibao, C. A. v. Lama*,
  633 F.3d 1330 (11th Cir. 2011) ........................................................................... 18

*MRI Scan Ctr., L.L.C. v. Nat'l Imaging Assocs., Inc.*,
  No. 13–60051–CIV, 2013 WL 1899689 (S.D. Fla. May 7, 2013) ............................. 9

*O.N. Equity Sales Co. v. Finra Dispute Resolution, Inc.*,

No. 1:07cv804, 2008 WL 281788 (S.D. Ohio Feb. 1, 2008) ........................................ 10

*Paul Revere Variable Annuity Ins. Co. v. Zang*,
    248 F.3d 1 (1st Cir. 2001) ...................................................................................... 10

*Peerless Cas. Co. v. Housing Authority of Hazelhurst, Ga.*,
    228 F.2d 376 (1955) ................................................................................................. 11

*Proulx v. Brookdale Living Cmtys. Inc.*,
    88 F. Supp. 3d 27 (D.R.I. 2015) ............................................................................... 9

*Rosenberg v. Lawrence*,
    541 So.2d 1204 (Fla. 3d DCA 1988) ...................................................................... 13

*Shea v. BBVA Compass Bancshares*, Inc.,
    No. 13–60051–CIV, 2013 WL 1899689 (S.D. Fla. May 7, 2013) ............................. 9

*South Fla. Water Mgmt. Dist. v. Montalvo*,
    84 F.3d 402 (11th Cir. 1996) .................................................................................... 9

*Spears v. SHK Consulting and Development, Inc.*,
    338 F. Supp. 3d 1272 (M.D. Fla. 2018) .................................................................. 16

*Steinberg v. Kerns*,
    907 So.2d 691 (Fla. 4th DCA 2005) ............................................................... 2 FN. 1

*Sun Life Assurance Co. of Can. v. Imperial Holdings Inc.*,
    2016 WL 10565034 (S.D. Fla. Sept. 22, 2016) ...................................................... 16

*Taylor v. Am. Honda Motor Co., Inc.*,
    555 F. Supp. 59 (M.D. Fla. 1982) ........................................................................... 17

*TransPetrol, Ltd. v. Radulovic*,
    764 So. 2d 878 (Fla. Dist. Ct. App. 2000) .............................................................. 17

*TV Service Zao v. NEW Talent Agency and Management, Inc.*,
    2013 WL 118306 (S.D. Fla. Jan. 9, 2013) .............................................................. 12

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ............................................................................... 11

*Whetstone Candy Co, Inc. v. Kraft Foods, Inc.*,
    351 F.3d 1067 (11th Cir. 2003) ............................................................................... 13

**Statutes**

Fed. R. Civ. P. 12(b)(1)..................................................................................................9

Fed. R. Civ. P. 12(b)(7)................................................................................................19

Fla. Stat. § 725.01 ......................................................................................................12

Defendants Scott Reynolds ("Reynolds") and SRR Fortress Capital, LLC ("SRR") respectfully submit this memorandum of law in support of their motion to dismiss Axos Clearing LLC's ("Axos Clearing") Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), Rule 9(b), and Rule 12(b)(7).

**PRELIMINARY STATEMENT**

This case presents a dispute about a clearing broker and FINRA member – the plaintiff Axos Clearing – and Reynolds, a former employee of the non-party Spartan Securities Group, Ltd. ("Spartan") who was at all relevant times a registered broker at Spartan.  Axos Clearing and Spartan were parties to a clearing agreement under which Spartan cleared all its trades through Axos Clearing, including all trading activity at issue in the Amended Complaint.  The mere identity of the parties, and the fact that the alleged transactions at issue in the Amended Complaint arise from trading activities covered by the Axos Clearing–Spartan clearing agreement make abundantly clear that this dispute falls squarely within the mandatory arbitration requirements of FINRA rule 13200.  Spartan in not a party to this case.  Though it is indispensable, it cannot be joined here, because FINRA rules and its agreements with Axos Clearing and Reynolds make every conceivable claim against it subject to mandatory arbitration in FINRA.  In fact, Reynolds and Spartan are already involved in a FINRA arbitration that covers the exact same trading activity, involving the exact same damages amount that Axos Clearing seeks against Reynolds here. This court has no jurisdiction to hear this dispute.

The Amended Complaint disregards the fact that all of Plaintiffs claims are subject to arbitration.  Remarkably, the Amended Complaint also disregards the full-day testimonial hearing this Court held in this case after which it dissolved the improperly obtained writs of garnishment and attachment that Plaintiff's obtained by way of filing a known false affidavit with this Court. In that hearing, Axos Clearing presented evidence and made critical admissions concerning the key events at issue in this action. However, in the hope of establishing certain claims with conclusory allegations, the Amended Complaint (drafted and filed *after* the hearing) asserts facts that are contradicted by Axos Clearing's own evidence presented at the hearing by its own legal counsel and its own cooperating witness, and directly contradicting Plaintiff's own admissions made in two affidavits filed by its legal counsel and introduced into evidence at the hearing. During this hearing, David Lopez ("Lopez"), Spartan's Chief Compliance Officer and Eshel Bar-

1

Adon ("Bar-Adon"), Chief Legal Officer of Axos Clearing, Axos Financial, and Axos Bank – along with Reynolds – all testified under oath at length about these issues.  Nonetheless, the later-filed Amended Complaint makes allegation that are irreconcilably inconsistent with the testimony and filings of Axos Clearing's own employees and witnesses, including Bar-Adon and McComb, as well as with Axos Clearing's witness Lopez's testimony.  On a motion to dismiss, the Court must credit all "plausible" claims as true.  But conclusory allegations that are contradicted by the Plaintiff's own agents and prior statements made by Plaintiff under oath should not be credited as "plausible".

Most egregiously, the Amended Complaint purports to place blame on Reynolds for losses suffered by Axos Clearing even though (1) Lopez unequivocally testified that Reynolds' access was cut off on the evening of March 6 and all subsequent trades (which caused the overwhelming majority of the losses) were placed *at the direction of Lopez by other Spartan Securities employees*, and (2) Bar-Adon admitted that *Axos Clearing failed to take proper steps to prevent or mitigate the losses caused by Spartan Securities* in derogation of its own internal policies and in violation of the securities laws on March 6 when it was required to cover Spartan's open positions.  Equally important, was the indisputable (and uncontradicted) testimony that Reynolds never spoke to any agents or representatives at Axos Clearing or its affiliates until Axos Financial CEO Greg Garrabrants ("Garrabrants") called him late in the evening on March 7, 2019.

Over and above the dispositive threshold issues of mandatory arbitration and the inability to join Spartan as a necessary party (which cannot be joined here because it is already involved in a FINRA arbitration on the exact same issues), the Amended Complaint is also deficient on its face.  While it purports to set forth two breach of contract claims – based on alleged breaches of the "Settlement Agreement" and "Pledge Agreement" – neither of these alleged "contracts" is valid.  As Axos Clearing's in-house counsel Ethan McComb readily acknowledged in his two affidavits filed with this Court in connection with the hearing, the purported "Pledge Agreement" was never signed, and, in fact, was expressly rejected when Reynolds counsel emailed an unsigned, revised version of the Pledge Agreement, which Axos Clearing refused to accept. [Dkt. 24 Ex. F]. While Axos Clearing attempts to avoid this inconvenient fact by alleging Reynolds "orally" agreed to the "Pledge Agreement" *via* Lopez, even if he had – which he did not as Lopez has already testified to under oath – Florida's statute of frauds forbids enforcement of an oral agreement to pay the debts of a third party.  So even if Lopez was lying under oath and he did tell Axos Clearing

that Reynolds would cover Spartan's losses, the oral "Pledge Agreement" is still a legal nullity requiring dismissal of this claim.[1]

The "Settlement Agreement" suffers from even greater infirmity. The "Settlement Agreement" was hurriedly drafted by Axos Financial's in-house counsel, Bar-Adon (who also signed the agreement on behalf of Axos Clearing), who schemed with Garrabrants to conceal Axos Clearing's own wrongdoing and negligence from Axos Financial's and Axos Bank's board of directors and shareholders. It was signed by Reynolds under extortion-like conditions under which he had one-hour to sign and could not make any edits under specific threats to his livelihood and liberty.  The outcome is a legally incomprehensible document entitled "Settlement Agreement" that fails to evidence mutual assent, or a meeting of the minds.

Specifically, during the conversations between Garrabrants and Reynolds in which the terms of the Settlement Agreement were being discussed, Garrabrants repeatedly stated that the "Settlement Agreement" would discharge Reynolds (and Spartan) from any potential liability from not only Axos Clearing, but **all** Axos Clearing *affiliates,* including its "ultimate parent" Axos Financial and its affiliate Axos Bank – the only entities for whom Garrabrants is formally associated.  These assurances were memorialized in the actual "Settlement Agreement," which expressly releases and discharges Reynolds of any potential liability from Axos Clearing, and all affiliates, including Axos Financial and Axos Bank, both of which are expressly referenced multiple times in the "Settlement Agreement."  Thus, mutual assent – at a minimum – required that Reynolds receive the benefit of the bargain: release and discharge from any future liability to Axos Clearing, and any affiliate, parent, or subsidiary, including Axos Financial and Axos Bank. But neither Axos Financial nor Axos Bank signed the agreement, or otherwise agreed to its terms.

As this Court is aware, Axos Clearing (a $20 million clearing company acquired just a few months ago on the heels of a SEC cease and desist order and $800,000 fine) had no authority to – and in fact did not – bind Axos Financial or Axos Bank (a $10 billion bank) nor their board of directors nor shareholders.  As a result, neither Axos Financial nor Axos Bank are bound by the

---

[1] Axos Clearing's fraud and negligent misrepresentation claims (Counts II–V) fail for the same reason, since "the statute of frauds bars the indirect recovery of damages for the breach of an oral contract through an action for negligent misrepresentation." *Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc.*, 826 F. Supp. 460, 466–67 (N.D. Ga. 1993); *see also Steinberg v. Kerns*, 907 So.2d 691, 692 (Fla. 4th DCA 2005) ("when a breach of contract action is barred by the statute of frauds, the action may not be brought indirectly as a fraud action").

terms of the Settlement Agreement, and have not released Reynolds from liability from any claims as required for the Settlement Agreement to be enforceable. Thus, any attempt to enforce the contract against Reynolds would either purport to impose obligations and relinquish rights of non-parties and non-signatories – which no court has the authority to do – or in the alternative require an attempt to revise the contract in a way that would necessarily strip Reynolds of the entirety of his benefit of the bargain. Axos Clearing now appears to have acknowledged as much, even going so far as to suggest that the repeated references to "Axos Bank," its "affiliates," and its "parent" were all "typographical errors," [Dkt. 50, pg. 1] even though these "typographical errors" were repeated across multiple filings and stated orally at the Hearing.[2] These infirmities are fatal and render the "Settlement Agreement" unenforceable.

As to the remaining claims, Axos Clearing has made no good-faith attempt to comply with Rule 9(b)'s particularity requirement on its fraud-based claims. Moreover, Axos Clearing's claim that the contract it seeks to enforce Count 1 should also be voided as fraudulently induced in Count 2 defies logic. The Amended Complaint also fails to allege how Reynolds "interfered" with any contract, nor does it allege Reynolds accrued any benefit, thus undermining its duplicative unjust enrichment claim. The Court lacks jurisdiction over the Amended Complaint, which, in any case, fails to state any claims on which relief may be granted.

**STATEMENT OF FACTS[3]**

At all relevant times, Reynolds was employed as a FINRA-registered broker (CRD # 2705340) at Spartan Securities Group, Ltd., an SEC and FINRA registered broker-dealer (CRD# 104478), in the capacity of head trader, with responsibility for trading in Spartan's proprietary trading account.[4] (Am. Comp. ¶ 17; Reynolds Aff. ¶ 1). At all relevant times, plaintiff Axos Clearing, LLC was a SEC and FINRA registered broker-dealer (CRD # 117176). (Am. Comp. ¶ 21). Defendant SRR Fortress Capital LLC is not a registered entity, however, the Amended Complaint makes no allegations as to SRR Fortress Capital LLC except to assert that it is an "alter

---

[2] For a more complete recitation of the numerous times Axos Clearing referenced "Axos Bank" in various filings and in oral arguments by way of "typographical error" before actually asserting for the first time it was a "typographical error" see Dkt. 50 This assertion was seven weeks after filing the initial complaint, which also included this "typo".

[3] While Reynolds recognizes the Court must accept the facts in the Amended Complaint, the following statement of facts sets forth the necessary background to the litigation and why it is subject to FINRA arbitration.

[4] Reynolds' employment with Spartan Securities ended on March 27, 2019.

ego" of defendant Reynolds.   (Am. Comp. ¶¶ 22–23). SRR Fortress Capital otherwise has absolutely nothing to do with the dispute in issue.

On information and belief, between March 6 and 7, 2019, Spartan fell victim to a complex algorithm-based pump and dump scheme involving Bio-Path Holdings, Inc. (stock ticker BPTH), a stock in which Spartan had taken a short position in its proprietary trading account.  (Reynolds Aff. ¶ 2). Reynolds, in his capacity as an employee of Spartan, was responsible for trading the stock on March 6, but his access to the order management system was cut off that night. (Ford Dec. Ex. 4, Hr. Lopez-Cross, 30: 17–20; 35:21–36:4).   Spartan employee George Lindner ("Lindner") conducted the trading activity on March 7 that resulted in an approximate $16.5 million realized trading loss.

The trades were being cleared by Axos Clearing LLC f/k/a COR Clearing LLC ("Axos Clearing"), a clearing broker, pursuant to a fully executed clearing agreement between Spartan and COR dated April 8, 2013. (Ford Dec. Ex. 1.)  Reynolds never personally traded through COR Clearing, nor could he have.

BPTH shares had been trading at around $2.00 per share throughout 2019 and averaging 120,000 trades per day. A sudden spike occurred on March 5, 2019, with 58,000,000 trades of BPTH stock executed that day and the price rising to nearly $8 per share before falling $4.62 per share on March 5, 2019.  Seeing this unusual spike which resulted in a stock price that was more than double what it had previously been worth, and without any news justifying this price spike, on March 6, 2019, Spartan took a short position believing the share price would drop to its prior levels. After Spartan took the short position, the BPTH shares spiked to $12 per share on March 6, 2019. At this point, Spartan had unrealized losses of about $2.2 million.  (Ford Dec. Ex. 4, Hr. Lopez-Cross, 36:5–21).

As a result of these unrealized losses, Reynolds' access to Spartan's order management system was cut off. Another Spartan trader was put in charge of placing trades in the stock before the market opened on March 7, George Lindner, and Lindner began placing trades in BPTH premarket at the direction of Spartan's COO Lopez, continuing throughout March 7. (Ford Dec. Ex. 4, Hr. Lopez Cross, 30:17–31:20).  That day, the stock spiked again to $74 before settling at $38 per share. Consequently, the unexpected spike in price resulted in an approximately $16.5 million realized loss to Spartan, creating a substantial net capital deficiency for Spartan, which it owed to Axos Clearing.

Since Spartan lacked capital to satisfy its FINRA capital requirements, Reynolds had volunteered **on March 6** to lend Spartan $2 million by way of wire transfer from an LLC account he controlled at TD Ameritrade in the name of SRR, while under no legal obligation to do so. (Hr. Lopez-Cross, 36:5–21). Consistent with this voluntary offer, he wired $600,000 on March 6 to his personal account, and another $1.5 million on March 7, with the intention at that time of lending this money to Spartan to cover its net-capital requirements. (Hr. Reynolds-Cross, 114:22–115:9).

Unknown to Reynolds, representatives of Axos Financial and Axos Bank, including its CEO Greg Garrabrants, were engaged in negotiations with Spartan to resolve the losses resulting from Spartan's account deficiency with Axos Clearing, and the substantial realized losses Spartan incurred when Lindner caused Spartan to cover its short position near the height of the market on March 7. These conversations appear to have taken place without any counsel present, and *without* Reynolds' knowledge or involvement.  During these conversations between Garrabrants and Spartan's CCO David Lopez and CEO Micah Eldred, Garrabrants was told by Lopez that Reynolds had a personal account at TD Ameritrade that had significant funds, and that Reynolds was building a new home in Miami.  Lopez and/or Eldred also apparently informed Garrabrants that Reynolds had agreed to provide $2 million to Spartan to cover Spartan's net capital deficiency. (Ford Dec. Ex. 2 ¶ 7).

Following these conversations, and *prior* to Reynolds having spoken to anybody at Axos Clearing about the incident, Ethan McComb, corporate counsel for Axos Clearing, sent an unsolicited email to Reynolds on March 7, 2019, at 11:53 a.m., stating "Thank you for your agreement this morning made to COR Clearing concerning the short position and deficit reflected in Spartan Securities Group Ltd.'s error account."  (Am. Cmplt. ¶ 58; Dkt. 24 Ex. F). This email contained a false recitation of what had occurred. Reynolds had not yet spoken to anybody at Axos Clearing and had not made any verbal commitment regarding any payment to anyone.  Nor did he ever come to any agreement to send Axos Clearing any money before 1:00 p.m. or at any time.  Reynolds never responded to this email and certainly never agreed with its contents. (Ford Dec. Ex. 2 ¶ 9).

Shortly thereafter, the CEO of Axos Clearing's "ultimate parent" company, Axos Financial, immediately began an extortionary campaign of threats and intimidation aimed directly at Reynolds to compel Reynolds to personally cover Spartan's trading losses even though Reynolds had no legal obligation to do so, on threat of a baseless criminal referral and other

improper intimidation.  Under duress of these threats, Reynolds tentatively suggested that while he was under no legal obligation to do so, he could agree personally to cover some of Axos Clearing's losses caused by Spartan's short position, so long as Axos Clearing agreed to allow Spartan to continue trading on its platform. Garrabrants agreed to negotiate further. (*Id.* ¶ 11). A few hours later, at about 1:30 a.m. on March 8, 2019, Garrabrants emailed an unsigned draft "Temporary Pledge Agreement" to Reynolds. (Ford Dec. Ex. 3). The agreement would have caused Reynolds and SRR to relinquish all rights to all funds in the TD Ameritrade account, including future earnings.  (*Id.*). Reynolds called Garrabrants early in the morning, at about 7:30 a.m. on March 8, 2019, informing him that he wanted to send the agreement to his attorney before signing it.  Garrabrants immediately called Reynolds, warning him that he should not have an attorney review the agreement. At about 7:51 a.m., Reynolds sent an email to Garrabrants stating, "…[Reynold's attorney][5] briefly scanned the pledge... He is diving into the actual language and asked for about 30 minutes to do so." (Dkt. 24 Ex. I). Reynolds' counsel advised him *not to sign the agreement* and provided Reynolds with a revised draft.  Prior to receiving the revised draft, Reynolds emailed Garrabrants again, at 8:18 a.m., that his attorney was revising the draft's language, and that Reynolds would forward the new agreement "in about 7-10 minutes." (Dkt. 24 Ex. J).  The "Pledge Agreement" was never signed.

Garrabrants and Reynolds spoke again on March 8, ultimately discussing terms whereby Reynolds would give Axos Clearing $7.5 million in cash, and Axos Bank would provide Reynolds with a "jumbo mortgage" for $3 million at five percent interest and would obtain a lien on Reynolds' house in that amount in the event Reynolds could not liquidate assets quickly enough to obtain the full $7.5 million due under the agreement. In exchange – and this was critical – Axos Clearing, Axos Financial, and Axos Bank would release Spartan (as well as Reynolds) from all potential liability for the short position losses in BPTH, so that Spartan would be able to continue to operate and continue clearing through Axos Clearing, and Reynolds would be permitted to continue trading through Spartan. Garrabrants, Reynolds, and Lopez engaged in a three-way conference call where these terms were discussed. Shortly thereafter, Lopez emailed Reynolds a draft affidavit covering what was said during this call and memorializing Garrabrants' acknowledgement that any agreement had to include a release of liability between Axos Clearing

---

[5] Reynolds was represented by different counsel than those appearing here.

and Spartan. (Dkt. 24 Ex. L).  Lopez corroborated this understanding during his testimony at the Hearing. (Ford Dec. Ex. 4, Hr. Lopez–Cross, 27:11–20).

Garrabrants threated Reynolds that he would push out false press releases about him if he did not sign a settlement agreement by 4 p.m. that day. (Ford Dec. Ex. 2, ¶ 16) Notwithstanding Garrabrants' hard 4:00 p.m. deadline, Garrabrants waited until 4:02 p.m. to send a legally incomprehensible document with the heading "settlement agreement" to Reynolds. (Dkt. 24 Ex. M). Based on its obvious and numerous legal deficiencies and errors, the draft agreement appears to have been cut and pasted from another document having nothing to do with this dispute.  The draft settlement agreement makes no sense, as it purports to be an agreement between Reynolds (and SRR) and Axos Clearing, when the underlying trade dispute stems from a purported breach of a clearing agreement between Axos Clearing and Spartan. It also purports to release Reynolds from any potential liability to Axos Financial and Axos Bank, although neither signed or were party to the "Settlement Agreement." What little sense can be made of the agreement is that it purports to require Reynolds and SRR to wire Axos Clearing $7.5 million from the SRR Account at TD Ameritrade within three hours, by 8:00 p.m. that evening, in exchange for all Axos Clearing's affiliates releasing Reynolds from any liability.

Prior to Reynolds having the opportunity to have his then counsel review the "settlement agreement," Garrabrants called Reynolds at 4:14 p.m. and told him, "You have the settlement agreement. Let's not fuck this up. Get this signed. The board is ready to go…I need it back in 90 minutes or everything is out of my control and the board takes over…and we will send out a press release that is worse than just the fraudulent trading…."  (Ford Dec. Ex. 2, ¶ 16). Under these threats, Reynolds, unable to make any edits and without reading the document, signed the document and sent it back to Garrabrants at 4:58 p.m., fifty-four minutes after receiving it. Reynolds did not realize that the terms in the document Garrabrants had sent did not include the terms the parties had just discussed on the phone. (Ford Dec. Ex. 2, ¶ 17). Critically, when Reynolds signed the agreement, Reynolds *did not* know that Axos Clearing had already successfully frozen the SRR Account on March 7, thereby precluding the $7.5 million wire necessary for Reynolds to comply with the "settlement agreement."  (Ford Dec. Ex. 6, ¶ 11). Had Reynolds known that Axos Clearing had frozen his account and he could not make the settlement agreement payment, he never would have signed the document.

8

Shortly after signing the document, Reynolds became aware that Spartan, the party responsible for the losses, had been excised from the agreement, but he nonetheless initiated a wire transfer of $7.5 million to Axos Clearing. Reynolds, however, then learned that the "Settlement Agreement" did not actually discharge or release him from potential liability **from Axos Financial and Axos Bank** because they were non-signatories, even though the "Settlement Agreement" purported to do so, rendering the "Settlement Agreement" illusory. At this point, Reynolds cancelled this wire.

In the following weeks, Garrabrants has made good on his promises to attempt to destroy Reynolds life and career by wrongful means. To begin with, Axos Clearing filed and obtained writs of garnishment and attachment on Reynolds TD Ameritrade account, effectively freezing Reynolds' access to all his money on the basis of knowingly false affidavits. The frivolously obtained writs were dissolved after an emergency hearing, already causing more than $1 million in losses to Reynolds. During this hearing, Axos Clearing intentionally withheld that it had also improperly obtained a *lis pendens*, which has resulted in disruption of funding needed to complete Reynolds' home and potential loss of the property.  Most Critically, Garrabrants also instructed his counsel to file a 8-K with the SEC that contains knowingly false statements, a violation of the securities laws, that falsely accuses Reynolds of fraud.  Motivated by these improper purposes and having realized the legal inadequacy of its initial complaint, Axos Clearing has submitted its defective Amended Complaint. This is not the only proceeding in which Reynolds is being forced to litigate the events of March 6 and 7, 2019.   On April 3, 2019, a FINRA arbitration between Reynolds and non-party Spartan Securities Group. Ltd. commenced based on the same core facts as those here.  (Ford Dec. Ex. 5).

Reynolds now moves to dismiss the Amended Complaint because the only appropriate forum for this dispute is FINRA, and because the Amended Complaint fails to state a claim, fails to comply with pleading standards, and relies on vague and implausible allegations that are belied by (and contradicted by) Plaintiff's own sworn testimony and affidavits from the preliminary hearing in this matter.

## ARGUMENT

### I.     Legal Standards

A motion to compel arbitration is treated as motion to dismiss under Fed. R. Civ. P. 12(b)(1).  *MRI Scan Ctr., L.L.C. v. Nat'l Imaging Assocs., Inc*., No. 13–60051–CIV, 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013); *Shea v. BBVA Compass Bancshares, Inc*., No. 12–23324, 2013 WL 869526, at *2 n. 3 (S.D.Fla. Mar. 7, 2013). When ruling on a motion to compel arbitration, courts should "draw [upon] the relevant facts from the operative complaint and the documents submitted to the [Court] in support of the motion to compel arbitration." *Cullinane v. Uber Techs., Inc*., 893 F.3d 53, 55 (1st Cir. 2018).  On a motion to compel arbitration, the Court "consider[s] facts in the light most favorable to the [non-movant] ... and exercise[s] its 'wide discretion' to look beyond the complaint at pleadings and documents submitted by either party." *Boulet v. Bangor Sec. Inc*., 324 F. Supp. 2d 120, 123-24 (D. Me. 2004).

While a court reviewing a complaint must accept as true well-pleaded facts and draw all reasonable inferences from those facts, to "survive a motion to dismiss, the complaint must set forth sufficient factual matter to state a claim that is facially plausible." *Gentry v. Carnival Corp.*, 2011 WL 4737062, at *2 (S.D. Fla. Oct. 5, 2011). "Where the allegations in the complaint do not allow the court to 'infer more than the mere possibility of misconduct,' the plaintiff has not shown that he is entitled to relief.  *Id*. (quoting *Aschcroft v. Iqbal*, 556 U.S. 662 (2009)). Thus, "[a]s a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss," and "when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate." *Id*. (citing *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996).[6]

**II.    The Entire Dispute is Subject to Mandatory Arbitration in FINRA**

FINRA Rule 13200(a) provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or

---

[6] Although courts will not ordinarily consider anything "beyond the face of the complaint and the documents attached thereto when analyzing a Rule 12(b)(6) motion to dismiss," courts recognize an exception "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("a document attached to a motion to dismiss may be considered" without converting to summary judgment if it is "central to the plaintiff's claim" and "undisputed," meaning "the authenticity of the document is not challenged").

Associated Persons." "Registration with NASD or FINRA is generally sufficient to compel arbitration under the NASD/FINRA rules." *Commonwealth Equity Services, LLC v. Ohio Natl. Life Ins. Co.*, 18-CV-12314-DJC, 2019 WL 1470131, at *4 (D. Mass Apr. 3, 2019); *see also, Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 9-10 (1st Cir. 2001); *Fenton v. Linsco/Private Ledger Corp.*, No. 96-10747-GAO, 1996 WL 464045, at *1-2 (D. Mass. Aug. 7, 1996); *O.N. Equity Sales Co. v. Finra Dispute Resolution, Inc.*, No. 1:07cv804, 2008 WL 281788, at *4 (S.D. Ohio Feb. 1, 2008); *McCullouch v. Janney Montgomery Scott LLC, 7th Dist. Columbiana No.* 13 CO 40, 2014-Ohio-4002, at ¶¶ 30-32.

Here, the Amended Complaint admits that at all relevant times, Axos Clearing was a FINRA-registered member firm and Reynolds was a registered broker at non-party Spartan. The dispute involves Spartan's acquisition of the BPTH shares, the clearing agreement between Spartan and Axos Clearing under which it cleared Spartan's trades, losses incurred in covering the position, and post-trade discussions, and allegations that Reynolds somehow "conceal[ed] unauthorized and reckless trading and fraudulent margin borrowing…" (Am. Comp. ¶ 1.)

Very little analysis is needed. The dispute unquestionably "arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." The fact that certain of the causes of action relate to alleged actions that occurred in the days following the trades does not render the dispute as something other than arising out of the business activities of Axos Clearing. Moreover, the inclusion of SRR does not alter the analysis. SRR is not alleged to have engaged in any conduct and is a Defendant solely as the alleged "alter ego" of Reynolds. Moreover, given the mandatory nature of the Axos Clearing's and Reynolds's obligations to arbitrate, any question of whether an alleged alter ego of Reynolds can be joined is a question for the arbitrators.

Because the entirety of the dispute is subject to Mandatory Arbitration under FINRA Rule 13200, this Court should dismiss the complaint in favor of arbitration under Fed. R. Civ. P. (b)(1).

### III.    Plaintiff Has Failed to Allege the Existence of an Unenforceable Contract

Under Florida law, for a breach of contract claim, Plaintiff must plead: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Doe v. Roe*, 2018 WL 4698886, at *7 (S.D. Fla. Sept. 29, 2018) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration and (4) sufficient specification of the essential

terms."   Both of Axos Clearing's breach of contract claims, Count I ("Breach of Settlement Agreement") and Count VII ("Breach of Pledge Agreement"), fail to allege the existence of an enforceable contract.

a.   *As Axos Clearing Has Already Admitted, Reynolds Never Agreed to the "Pledge Agreement," And in Fact Expressly "Refused" To Sign It – to Quote Plaintiff Axos Clearings In-House Counsel Ethan McComb's Affidavit*

There is no "Pledge Agreement" in this case. Axos Clearing has already admitted as much in the McComb Affidavit filed in opposition to Reynolds' successful motion to dissolve the improperly obtained writs of garnishment and attachment.  The McComb Affidavit expressly and correctly recognizes that Reynolds "refused" to "execute the pledge agreement." (Opp. Ex. B McComb Aff. II, ¶ 6).  This fact is further corroborated by the fact Garrbrants emailed an **unsigned** draft of the "Pledge Agreement" to Reynolds on at 1:24 a.m. (EST) on **March 8, 2018**, and Reynolds sent a draft revised by his attorney the following morning, which was never signed by either party.   (Dkt. 24 Ex. M). This "counter-offer" nullified the "Pledge Agreement," thus rendering the Amended Complaint's allegation that Reynolds "breached" the "Pledge Agreement" by failing to wire $2 million to Axos Clearing by 1:00 p.m. **on March 7, 2019** legally vacuous. *See Peerless Cas. Co. v. Housing Authority of Hazelhurst, Ga.*, 228 F.2d 376, 378 (5th Cir. 1955) ("Unless the acceptance is unconditional and without variance from the offer it is of no legal effect as an acceptance and operates as a rejection and a counteroffer.").

The Amended Complaint alleges that Reynolds had told Lopez that he would send $2 million to Spartan to cover Spartan's net cap deficiency (a proposal Reynolds made prior to Spartan revoking Reynolds' trading authority).   Yet, even accepting as true (as the Court must) that this proposal was an "oral promise" to send Spartan $2 million to cover its net cap, the Amended Complaint nonetheless fails to set forth the existence of a valid, enforceable "Pledge Agreement." Alleged promises by Lopez or Eldred on behalf of Spartan made to Axos Clearing cannot bind Reynolds (or SRR).[7]   *See TV Service Zao v. NEW Talent Agency and Management, Inc.*, 2013 WL 118306, at *7 (S.D. Fla. Jan. 9, 2013) ("a contract cannot bind one who is not a party thereof").   Nor does the Amended Complaint even purport to suggest what the terms of this

---

[7] *Compare* Ford Dec. Ex. 6, (McComb Aff. I ¶ 6) ("Reynolds' agreement to make Axos Clearing whole was communicated to Axos Clearing **by Lopez**." (emphasis added); Am. Cmplt ¶ 103 ("Reynolds…though Spartan (including but not necessarily limited to David Lopez), knowing [sic] and intending for Spartan to relay Reynolds' representations to Axos Clearing….").

alleged agreement were and what consideration Reynolds would be receiving – presumably because he would not have received any.  It is for this exact reason that Florida courts will not enforce a "promise" to enter into a "contract." *See In re Standard Jury Instructions–Contract and Business Cases*, 116 So.3d 284 (Mem) (Fla. 2013) ("the so-called 'contract to make a contract' is not a contract at all"). Moreover, even had such an "oral promise" been made by Reynolds to pay moneys owed by Spartan to Axos Clearing under *their* clearing agreement, it would nevertheless be unenforceable under Florida's statute of frauds. *See Fla. Stat.* § 725.01 ("promise to pay another's debt…shall be in writing and signed by the party charged therewith or by some other person by her or him thereunto lawfully authorized."); *American Atlantic Lines v. Ros Forwarding, Inc.*, 441 So.2d 1153, 1154 (Fla. 3d DCA 1983) ("The statute of frauds prohibits actions based on unwritten promises to pay the debts of third parties…").[8] Count VII must be dismissed as a matter of law.

   b.   *The "Settlement Agreement" Lacks Mutual Assent, and the Consideration is Illusory*

   More importantly, the "Settlement Agreement" described in the Amended Complaint is unenforceable, and hopelessly so.  Reynolds was expressly told that the agreement would release Reynolds (as well as Spartan) from any potential liability as to Axos Clearing, and its affiliates and parent, including Axos Financial and Axos Bank, and the final "Settlement Agreement" in fact purports to release and discharge Reynolds from any liability as to Axos Clearing, and its affiliates and parent, including Axos Financial and Axos Bank.  *See* Dkt. 24 Ex. M ("Axos Clearing, on its own behalf and on behalf of its parent, subsidiary and affiliate companies, and agents, directors, and officers, hereby releases, acquits, and forever discharges Defendants….")

   In other words, both parties understood the "Settlement Agreement" to waive and relinquish the rights of non-parties and non-signatories Axos Financial and Axos Bank (and all Axos affiliates) as the consideration to Reynolds. Yet, it is black letter law that a subsidiary cannot bind its parent (here Axos Financial) nor an affiliate (here Axos Bank) nor their boards of directors

---

[8] Axos Clearing attempts to circumvent the statute of frauds by alleging that McComb sent an unsolicited email "memorializing this agreement." (Am. Compl. ¶ 58). As a matter of law an email sent unsolicited that goes unresponded to does not constitute a contract nor satisfy the statute of frauds. *See Bullock v. Harwick*, 158 Fla. 834, 838 (Fla. Sup. Ct. 1947) ("a mere mental intention to accept an offer, however, carefully formed, will not create a contract").

or shareholders.[9]  *See Federated Title Insurers, Inc. v. Ward*, 538 So.2d 890, 891 (Fla. 4th DCA 1989) ("parent corporation which is not a signatory party to an agreement is not bound" by its terms); *Whetstone Candy Co, Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th Cir. 2003) ("Corporations are separate legal entities and contracts made by the parent corporation do not bind a subsidiary merely because one corporation owns all of the stock of the other corporation.").  Even the Hearing testimony of the lawyer from Axos Clearing Bar-Adon – who drafted the document – admitted this possibility.  (Ford Dec. Ex. 4, [at Dkt. 45], Hr. Bar-Adon-Cross, 85:18–86:11) (Q: And do you understand whether Axos Financial is still able to file a complaint against Mr. Reynolds? [] A: I don't know one way or the other. I haven't looked into that. Q: And would Axos Bank be able to file a lawsuit against Mr. Reynolds? A: Again, I have not looked into that. [] I haven't looked at all the possible causes of action that any of the family of companies that constitutes Axos Financial might have against Mr. Reynolds.").  If the drafter and signer of the "Settlement Agreement" is not willing to assert that the "Settlement Agreement" releases Reynolds from all claims by all Axos Clearing affiliated companies, then there was no mutual assent and any consideration to Reynolds is illusory.

No amount of fanciful pleading can fix this contract, since no mutual assent existed given that both parties – and certainly Reynolds – believed that Axos Financial, and all Axos Clearing affiliates, discharged Reynolds of all potential liability.  *See DNA Sports Performance Lab. Inc. v. Club Atlantis Condominium Association, Inc.*, 219 So.3d 107, 109 (Fla. 3d DCA 2017) ("A breach of contract claim requires the existence of a valid contract.").  Indeed, "[m]utual assent is an absolute condition precedent to the formation of the contract. Absent mutual assent, neither the contract nor any of its provisions come into existence." *Gibson v. Courtois*, 539 So.2d 459, 460 (Fla. 1989). "Lack of mutual assent is also fatal," and thus an individual "is not obligated under a contract provision to which he never assented." *Id.* at 461.

The Amended Complaint proves the point: as Axos Clearing simultaneously seeks to enforce a "Settlement Agreement" that limits its recovery to $7.5 million while now purporting to seek $16.6 million.  *See Rosenberg v. Lawrence*, 541 So.2d 1204, 1206 (Fla. 3d DCA 1988) ("Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under

---

[9] Axos Clearing has already admitted in Court filings and at the Hearing that Axos Financial is the "ultimate parent" of Axos Clearing, and that Axos Bank is an "affiliate" of Axos Clearing. (Dkt. 49, Pl. Opp. to Motion to Discharge Lis Pendens).

the contract. There is no valid contract and neither side may be bound."). Moreover, no possibility of "revising" the "Settlement Agreement" exists since the Court would have to excise Axos Financial, Axos Bank, all Axos Clearing affiliates and their boards of directors and shareholders – necessarily stripping Reynolds of the benefit of the bargain. *See Barnes v. Diamond Aircraft Industries, Inc.* 499 F. Supp. 2d 1311, 1317 (S.D. Fla. 2007) ("a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties").[10] The "Settlement Agreement" referenced in the Amended Complaint is a dead letter, and may not form the basis of a breach of contract claim.[11]

### IV. Plaintiff's Fraud Based Claims Lack Specificity Under Rule 9(b), Are Duplicative of the Breach of Contract Claims, And These and Plaintiff's Remaining Claims Fail to State Claim

##### a. *The Amended Complaint Fails To State Fraud Claims With Sufficient Particularity, And Count II–V Are Otherwise Legally Deficient*

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also* Fed. R. Civ. P. 9(c) ("when denying that a condition precedent has occurred or been performed, a party must do so with particularity"). This heightened pleading requirement is intended to alert defendants to the "precise misconduct

---

[10] *See also John M. Floyd Assocs., Inc. v. First Florida Credit Union*, 443 Fed. App'x 396, 399 (Fla. 11th Cir. 2011) ("An interpretation is not reasonable if it requires rewriting the contract to add language that a party omitted and in order to impose an obligation on the party that was not in the original bargain."); *Hill v. Peering Bay Marina Ass'n, Inc.*, 985 So.2d 1162, 1166 (Fla. 3d DCA 2008) ("As this and many other courts have stated, courts do not rewrite contracts."); *Managed Care Solutions, Inc. v. Community Health Systems, Inc.*, 2012 WL 12861133, at *8 (S.D. Fla. May 14, 2012) ("the court cannot ignore certain language 'because all terms of a contract provision must be read as a whole to give every statement meaning'").

[11] The "Settlement Agreement" is also unenforceable because Plaintiff now disclaims the only other consideration that Reynolds bargained for in the contract. The Settlement Agreement that Reynolds signed provided that "Axos Bank" would provide him with a $3 million mortgage in exchange for a lien on his property.  But in its memorandum in opposition to Reynolds' motion to discharge the lis pendens Plaintiff filed on his property, Plaintiff argued that the reference to "Axos Bank" was a typographical error and that the provision should have included a reference to "Axos Clearing". [Dkt. 50, pg. 1] Crediting Plaintiff's typo argument renders the entire agreement unenforceable because it changes the agreement as to preclude a finding of any meeting of the minds.  Obviously, Reynolds never would have agreed to accept a mortgage from Axos Clearing because such a mortgage would be illegal under Florida State law, which requires all corporate issuers of mortgages to be registered with the state. Axos Clearing is not so registered, and it would therefore be unlawful for it to issue a mortgage to Reynolds.

with which they are charged." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988). Thus, to survive a motion to dismiss a fraud claim, the party must set forth: "(1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) it; (3) the content of such statements and the manner in which they caused the plaintiff to be misled; and (4) what the defendants obtained as a result of the fraud." *Id.*

The Amended Complaint has failed to meet this heightened burden on Counts II–V, which all sound in fraud. These four claims, which are virtually identical, are purportedly based on the allegations (1) Reynolds "did not intend to comply with his payment commitments" under the "Settlement Agreement,"[12] (2) purported statements made by Reynolds to Lopez (or other Spartan employees) that were than purportedly repeated to Axos Clearing, and (3) purported alterations to Spartan's internal BRASS system.  But the first basis cannot form the predicate for a fraud count here, and all three grounds fail to specify what statements or omissions Reynolds made, and, in any event, are belied by the record established at the Hearing and through affidavits submitted by Axos Clearing.  Even taking the Amended Complaints allegations as true, the vague references to "representations and false promises" fail to specify precisely what Reynolds said to Axos Clearing, the time and place these statements were made, the content of the statements and how they misled Axos Clearing, and any benefit accrued to Reynolds.

In fact, as Axos Clearing has admitted in previous filings, Reynolds never made any such "representations and false promises" to Axos Clearing, but rather only alleges that "Reynolds' agreement to make Axos Clearing whole was *communicated to Axos Clearing by Lopez*…." (McComb Aff. I, ¶ 6) (emphasis added).  Yet, at the Hearing, Lopez testified in a manner that directly undermines the allegations in the Amended Complaint.

> Q: And just for clarity, Mr. Reynolds had no responsibility for trading at all on March 7th, correct?
> A: He placed no positions on the 7th, correct.
> Q: You testified earlier that Mr. Reynolds had promised to send $2 million to Spartan Securities on March 6th; is that correct?
> A: He was going to send the money, yes.
> Q: And he was going to send that money to be used by Spartan Securities

---

[12] As Axos Clearing is aware (see McComb Aff. II ¶ 4), Reynolds had initiated the transfer of $7.5 million to Axos Clearing but cancelled the wire transfer after becoming aware that the parties Reynolds understood were releasing and discharging him (and Spartan) from liability – based on the plain language of the "Settlement Agreement" – were not actually releasing him.

for its net capital requirements; is that correct.

A: In order to cover the loss or net capital requirement, that's correct.

[]

Q: Mr. Reynolds, in fact, never agreed with you to give $2 million for the benefit of Axos Clearing; isn't that correct?

A: We never discussed him giving any funds to just solely benefit Axos Clearing.

(Ford Dec. Ex. 4, Hr. Lopez 36:13–25).  Given this testimony, the Amended Complaint fails to set forth a plausible claim for (indirect) fraud, and the Court need not accept these legal conclusions couched as factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 9(b) requires dismissal, since the Amended Complaint fails to set forth with particularity any false statements allegedly made by Reynolds to Axos Clearing.

> b. *The Fraud Claims Are Barred by the Florida's Independent Tort Doctrine, And Are Otherwise Duplicative*

Florida courts apply "the independent tort doctrine" under which it 'is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." *Spears v. SHK Consulting and Development, Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) (*citing Sun Life Assurance Co. of Can. v. Imperial Holdings Inc.*, 2016 WL 10565034, at *5 (S.D. Fla. Sept. 22, 2016)).  Under this doctrine, the critical inquiry for a fraud claim "focuses on whether the alleged fraud is separate and apart from the performance of the contract." *Id.* (*quoting Kaye v. Ingenio, Filiale Do Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) ); *see also Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (holding that a fraudulent-inducement claim is independent of a breach-of-contract claim only when "the fraud allegations are separate and distinct from defendant's performance under the contract").

The Amended Complaint (Counts II, III, and IV) seeks to impose liability solely on the basis that Reynolds "had no intention of fulfilling his commitments" under the "Pledge Agreement" and "Settlement Agreement."  Specifically, Axos Clearing points to Reynolds failure to close out this BPTH position (an impossibility since Reynolds access to the system had been terminated on March 6, 2019 the day before BPTH stock spiked causing Spartan its losses) and that Reynolds failed to wire certain funds to Axos Clearing.  Even assuming these facts, they are indistinguishable from the claim that Reynolds failed to satisfy the terms of the "Pledge Agreement" (Count VII, breach of contract) and the "Settlement Agreement" (Count I, breach of

contract). Accordingly, even if the Amended Complaint had satisfied Rule 9(b)'s particularity requirement, the mere fact that Reynolds allegedly failed to fulfill the terms of the "contracts" is insufficient to state these fraud-based claims.

c. *The Amended Complaint Fails to Allege Reynolds Had A Duty to Disclose, And In Any Event Spartan's Actual BPTH Position Was Available and Known to Axos Clearing At All times Through NSCC System*

In Florida "[a] defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. Dist. Ct. App. 2000). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* at 880. Here, the Amended Complaint does not allege a fiduciary, or even a contractual relationship between Axos Clearing and Reynolds – nor could it.  Moreover, the testimony at the Hearing makes clear that Reynolds did not communicate with Axos Clearing until after his trading rights has been revoked by Spartan. Thus, the Amended Complaint fails to allege a duty to disclose.

d. *Axos Clearing Has Not Alleged the Elements of Tortious Interference or Unjust Enrichment*

"Under Florida law, the elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Menudo Intl., LLC v. In Miami Prod.*, LLC, 17-21559-CIV, 2018 WL 1745395, at *3 (S.D. Fla Apr. 11, 2018).  Here, while Axos Clearing alleges the existence of a contract, and a trading loss incurred as a result of that contract, it does not assert that it sustained a loss due to the loss of (or harm to) its relationship with Spartan.  The "tortious interference" claim is a mere rewording of the other claims and fails to allege loss caused by unjustified interference with a relationship.  Axos Clearing's claim of unjust enrichment must be dismissed as well because the Amended Complaint fails to allege that Reynolds gained anything from the transactions or was enriched at all (justly or otherwise).

V.    **The Complaint Fails to Join Necessary Parties Axos Financial, Axos Bank, and Spartan Securities**

Pursuant to Rule 12(b)(7), courts may dismiss an action for "failure to join a party under Rule 19." Rule 19 "provides for mandatory joinder of parties," and [i]f the party is indispensable, then [the court] must dismiss the entire case." *Molinas Valle Del Cibao, C. A. v. Lama*, 633 F.3d 1330, 1333–34 (11th Cir. 2011) (citing *Fritz v. Am. Home Shield Corp.*, 751 F.2d 1152, 1155 (11th Cir. 1985)). Here, the case cannot proceed without the involvement of Spartan. However, due to the application of FINRA Rule 13200, as well as the mandatory arbitration clauses in the Axos Clearing-Spartan clearing agreement as well as Reynolds's employment agreement with Spartan, Spartan cannot be joined in the case. Indeed, a FINRA arbitration between Reynolds and Spartan for the same damages sought here and based on the same alleged conduct has already been commenced. (Ford. Dec. Ex. 3).

Pursuant to Rule 19(a), a court must join a person who "is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" if: (A) in that person's absence, the court cannot accord complete relief among the existing parties; or (B) that person claims an interest relating to the subject of the action and is situated that disposing of the action in the person's absence may: (i) as a practical matter impair of impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Here, it is apparent that Spartan, the actual counterparty in all of the trades at issue, must be joined. Axos Clearing has attempted to leap over its clearing client Spartan to allege liability directly against Spartan's employee. But this does not obviate the need for Spartan's joinder. As set forth above, the claims arise from short trades *Spartan placed* via Axos Clearing pursuant to a clearing agreement between the two. While Reynolds caused Spartan to acquire the position on March 6 he was suspended from trading after the market's close when unrealized losses were approximately $2 million with potential of complete mitigation of losses. Spartan then engaged in trading to cover the short near the stock's all-time high closing price, resulting in an approximate loss of $16.5 million (which *it* owed to Axos), incorrectly blaming Reynolds for the loss. The losses were directly caused by Axos Clearing and Spartan's own negligence, recklessness, and intentional misconduct.

"Rule 19 states a two-part test for determining whether a party is indispensable." *Florida Wildlife Fed. Inc.* 859 F.3d at 1316. "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should

be joined but cannot be, [] then the court must inquire whether, applying the factors enumerated in Rule(b), the litigation may continue."[13] *Id.*

A judgment entered against Reynolds in the absence of Spartan would prejudice Reynolds because the liability Axos Clearing seeks is contractually already owed to Axos Clearing by Spartan under the clearing agreement.  Spartan is solely responsible for the entire $16.6 million, but any judgment against Reynolds here will result in inconsistent outcomes.[14] This prejudice cannot be lessened or avoided with a provision in the judgment, because this Count cannot bind the FINRA arbitrators in the Spartan action.  Yet Axos Clearing would have an adequate remedy if the action were dismissed for nonjoinder: it could arbitrate in FINRA, as it is required to do.

Given the facts as alleged in the Amended Complaint, Spartan must be joined.  However, it cannot be joined because every claim against it must be arbitrated, either under FINRA Rule 13200, or under the arbitration provisions of the clearing agreement and Reynolds's employment contract. As a result, the Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(7).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss the action in its entirety with prejudice pursuant to Rule 12(b)(1), Rule 12(b)(7), Rules 9(b) and 12(b)(6), and grant any other relief it deems just and proper.

Dated: May 27, 2019

---

[13] Rule 19(b) sets out four factors used to determine whether a case should be dismissed where a "required" or "indispensable" person may not be joined: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (a) protective provisions in the judgment; (b) shaping the relief; or (c) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.*

[14] If Reynolds is found liable here, but prevails in the arbitration, he will have been adjudicated responsible for the loss as well as not responsible. If Reynolds is found liable here and does not prevail in the arbitration, he will have been adjudicated responsible for the loss twice to two separate parties.

Respectfully Submitted,


/s/ Adam Ford
Ford O'Brien LLP
Adam C. Ford, Esq.
aford@fordobrien.com
Matthew Aaron Ford, Esq.
mford@fordobrien.com
575 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 858-0040

/s/ Lorne Berkeley
Lorne E. Berkeley, Esq.
Florida Bar No.: 146099
Email: LBerkeley@drbdc-law.com
4000 Ponce De Leon Blvd., # 800
Coral Gables, Florida 33146
Telephone No.: (305) 448-7988
Facsimile No.: (305) 448-7978
*Counsel for Defendants*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 27 day of May 2019, I electronically filed the above document using CM/ECF set forth upon all parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those who are not authorized to receive electronically Notices of Electronic Filing.


/s/ _____