# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-20979-KMM

AXOS CLEARING LLC

    Plaintiff,

v.

SCOTT REYNOLDS, an individual;
SRR FORTRESS CAPITAL, LLC,
A Florida limited liability company

    Defendants.

AFFIDAVIT

## AFFIDAVIT OF SCOTT REYNOLDS

I, Scott Reynolds, being duly sworn, hereby, under risk of penalty and perjury, do solemnly, sincerely, and truly declare and affirm:

1. I was employed as a registered broker at Spartan Securities Group, Ltd. ("Spartan Securities"), an SEC and FINRA registered broker-dealer, in the capacity of head trader, with responsibility for trading in Spartan Securities' proprietary trading account. My employment with Spartan Securities recently ended.

2. It appears that on March 6 and 7, 2019, Spartan Securities fell victim to a complex algorithm-based pump and dump scheme involving a Bio-Path Holdings, Inc. (stock ticker BPTH), a stock Spartan Securities had taken a short position in in its proprietary trading account.

3. In my capacity as an employee of Spartan, I was responsible for trading the stock on March 6, although my access to the trading platform was cut off that night, and all future trades placed by Spartan Securities were made by another employee on March 7 aside from approximately 200 total shares traded. The trades were being cleared by COR Clearing, a clearing broker, pursuant to a fully executed clearing agreement between Spartan Securities and COR dated April 8, 2013. COR Clearing is a clearing platform whose parent company, COR Securities Holding Inc., is wholly owned by Axos Clearing LLC. I never personally traded through COR clearing, nor could I have since I was not a registered broker dealer and had no account there.

4. I am also the sole and managing member of an LLC, which has a trading account at TD Ameritrade. That company, SRR, engages in certain options trading, that are entirely unrelated to trading activity that I engage in as an employee of Spartan Securities. A condition of my employment with Spartan Securities – consistent with industry practice – is that a copy of my monthly trading records are sent from any outside trading account directly to the Chief Compliance Officer at Spartan Securities to ensure that I am not engaged in any inappropriate trading at any outside account.

5. BPTH shares had been trading at around $2.00 per share throughout 2019 and averaging 120,000 trades per day. A sudden spike occurred on March 5, 2019 with 58,000,000 trades of BPTH stock executed that day and the price rising to nearly $8 per share before falling $4.62 per share on March 5, 2019. Seeing this unusual spike which resulted in a stock price that was more than double what it had previously been worth, and without any news justifying this price spike, on March 6, 2019, Spartan Securities took a short position believing the share price would decrease again to its prior levels. After which, the BPTH shares unexpectedly spiked to

$12 per share on March 6, 2019. At this point, Spartan Securities had realized losses of about $2.2 million.

6. As a result of these losses, my access to Spartan Securities' order management system was cut off by the evening of March 6, and other Spartan traders were put in charge of placing trades in the stock before the market opened on March 7. On March 7, the stock spiked again to $74 before settling at $38 per share. COR Clearing had lacked proper monitoring and took no steps to mitigate losses caused by Spartan Securities short position, resulting in $16.5 million losses to Spartan Securities. These losses created a substantial net capital deficiency for Spartan Securities. While under no legal obligation to do so, because Spartan Securities lacked capital to satisfy its FINRA capital requirements, I volunteered to lend Spartan $2 million by way of wire transfer from an LLC account I controlled at TD Ameritrade in the name of SRR. Consistent with this voluntary offer, I wired $600,000 on March 6 to my personal account, and another $1.5 million on March 7, with the intention at that time of lending to Spartan Securities this money to cover its net-capital requirements.

7. Unknown to me, representatives of Axos Financial and Axos Clearing's CEO Greg Garrabrants – purportedly on behalf of COR Clearing – were engaged in negotiations with Spartan Securities to recover the losses resulting from the capital account deficiency with Spartan Securities. These conversations appear to have taken place without any counsel present, and *without* my involvement. It is my current understanding, that during these conversations between Garrabrants and Spartan Securities' CCO David Lopez and CEO Micah Eldred, Garrabrants was told that I had a personal account at TD Ameritrade that had significant funds, and that I was building a new home in Miami. Lopez and or Eldred also apparently informed

Garrabrants that I had agreed to provide $2 million to cover Spartan Securities net capital deficiency

8. Following these conversations, and *prior* to my having spoken to anybody at COR Clearing or Axos Clearing about the incident, Ethan McComb, corporate counsel for COR Clearing, sent an unsolicited email to me on March 7, 2019, at 11:55am, stating "thank you for your agreement this morning made to COR Clearing concerning the short position and deficit reflected in Spartan Securities Group Ltd.'s error account." The email further stated: "In sum, you have agreed to provide COR $2 million prior to 1pm EST today via Spartan to cover the current shortfall with a further commitment to cover the entire remainder of the shortfall, and will execute agreement to memorialize the same which shall include an agreement by you to COR to pledge cash and securities in an account you maintain with TD Ameritrade…."

9. This email contained a false recitation of what had occurred. I had not yet spoken to anybody at COR Clearing or Axos Clearing, and had not made any verbal commitment regarding any payment, nor did I ever come to any agreement to send COR Clearing any money before 1 p.m. or at anytime. I never responded to this unsolicited email and certainly never agreed with its contents.

10. I received a phone call from Garrabrants on 6:30pm on March 7, 2019. Garrabrants left a voicemail on my cellphone. Around 9:00pm that same evening, Garrabrants and I had a phone conversation without any counsel present in which Garrabrants told me:

- "We have a problem. You almost put our subsidiary out of business with this $16.5 million, Clearing only had $20 million. Now we need to move funds from our other entities to Clearing."

- "I'm going to give you an opportunity to work this out, but this needs to be worked out, or you are going to be in a world of hurt. I'm going to have my shareholders go after you. Both me and my shareholders will be going after you. Now, do you want to come to an agreement? Clearing's loss was $15.2 million,

and if we can come in around $13 million, I'm eating $2 million and you can be released of all liability from our shareholders."

- "I can see your other trading accounts and I can go after that and your other bank accounts. I don't know how you are going to fund this nice new house of yours that you are building."

- "You are never gonna work in this industry… You will have no career left…You are going to go into bankruptcy and lose the house…We are in the process of preparing civil actions that could lead to jail time…The SEC is going to be looking at this, but if you settle with me that will make it a lot better."
- "If you settle with us, SEC and FINRA are more likely to turn a blind eye to this" and reiterating that "if you don't want the shareholders on your back, I need cash, so that I don't have to disclose this."

11. Under duress of these threats, I tentatively suggested that that I could agree to personally cover $10 million of COR Clearing's losses caused by Spartan Securities short position, so long as COR Clearings agreed to allow Spartan Securities to continue trading on its platform, and I would remain an employee of Spartan Securities – to which Garrabrants agreed to further negotiate.

12. A few hours later, at about 1:30 a.m., on March 8, 2019, Garrabrants emailed a "Temporary Pledge Agreement" to me. Although at the time I did not understand the legal terms in the document, I now understand that the agreement would have caused me and SRR to relinquish all of our rights to all funds in the SRR TD Ameritrade account, including future earnings. I called Garrabrants early in the morning about 7:30am on March 8, 2019, informing him that I "was willing to sign the pledge, but I want to send it to my attorney first." Garrabrants responded:

- "I don't think you need to give it to an attorney"

- "I don't recommend you send this to your lawyer"

- "I'm giving you a chance. You need to sign this now."

13.  I learned shortly thereafter that morning that immediately after I told Garrabrants that I wanted to have my attorney review the "Temporary Pledge Agreement" Axos Financial had filed an 8-K accusing me of fraud. After the filing of the 8-K, Garrabrants and I spoke on the phone and he said:

- "I told you not to get lawyers involved";
- "I gave you an opportunity and you fucked it up";
- "Things are going to be a lot worse for you once the [Axos] Board finds out";
- "you are going to wind up in jail for this";
- "I sent you a life line and you didn't take it. You see what happens when you fuck with me? Did you see what came out in the 8-K? We are gonna have a lot more behind this if we don't settle this by 4pm. I can issue *another* press release that is even more damning than this."

On this phone call, Garrabrants referred to the 8-K as a "press release" that he could issue for the purpose of inflicting harm on me. When I asked why he filed the 8-K, Garrabrants responded, "I am a ex-Goldman Sachs banker and you don't fuck with a Goldman Sachs banker." Garrabrants again threatened that he would take actions that would result in me "going to jail." Under these threats and overtaken by the duress, I said, "let's talk through this and try to negotiate," to which Garrabrants responded, "the pledge is off the table." Garrabrants told me that if a settlement agreement was not reached by 4 p.m. that day, he would have to disclose what occurred to his Board, and that a criminal referral would be made.

14.  Garrabrants and I spoke several more times on the phone over the course of March 7, ultimately discussing terms whereby I would give Axos Clearing $7.5 million in a cash and a "jumbo mortgage" with a $3 million lien on my house and in exchange Spartan Securities (and me) would be released of any potential liability for the short position losses by Axos Clearing, COR Clearing, and any other affiliates, so that Spartan Securities would be able to

continue to operate, and I would be permitted to continue trading through Spartan Securities. After discussing these terms, Garrabrants, Lopez, and I had a conference call where these terms were discussed. During this conversation, Garrabrants stated that he would "retract" the previously filed 8-K, and Spartan Securities would be released from liability "for the loss suffered in its trading account."

15. Garrabrants had not informed me prior to sending the draft settlement agreement that corporate counsel for COR clearing had already succeeded in freezing the SRR TD Ameritrade account, thereby precluding me from wiring the money out of the account, even though the settlement agreement said I had to do so by 8:00pm that evening, March 8, 2019.

16. Prior to me having the opportunity to have my attorney thoroughly review the "settlement agreement," Garrabrants called me at 4:14 p.m., and told me, "You have the settlement agreement. Let's not fuck this up. Get this signed. The board is ready to go…I need it back in 90 minutes or everything is out of my control and the board takes over…and we will send out a press release that is worse than just the fraudulent trading…."

17. Under these threats, I signed the settlement agreement and returned it at 4:58 p.m.

18. I did not know that Axos Clearing had successfully frozen the SRR account on March 7, thereby precluding the $7.5 million wire necessary for me to comply with the "settlement agreement," nor did I realize that the "settlement agreement" – full of legalese I did not understand – did not contain the terms agreed on the phone call with Lopez. Even though I initiated a wire transfer of $7.5 million to COR Clearing, the wire transfers was cancelled, and ultimately, my attorneys contacted TD Ameritrade multiple times to request that no wires be permitted from the account.

19. To date, Axos Clearing has failed to serve me or SRR with either a Complaint or notice of the writs of garnishment and attachment.

Dated: March 28, 2019
Miami, Florida

Sworn to before me this

_____
Scott Reynolds

28 day of March 2019

_____
Notary Public

KATHERINE JASKOT
Notary Public, State of New York
No. 02JA6059208
Qualified in New York County
Commission Expires September 18, 2019